# EXHIBIT A

| Summons | CIVIL DOCKET NO. 25-cv-02159 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: John Donahoe, Plaintiff(s) vs. Amazon Web Services, Inc., Defendant(s) | | John E. Powers III, Acting Clerk of Courts<br>Suffolk County<br>COURT NAME & ADDRESS:<br>Suffolk Superior Civil Court<br>Three Pemberton Square<br>Boston, MA. 02108 |

THIS SUMMONS IS DIRECTED TO Amazon Web Services, Inc. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the Suffolk County Superior Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court <u>and</u> mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, Suffolk Superior Court 3 Pemberton Square, Boston, MA 02108 (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address: Herold Law Group, P.C., 127 Main Street, Charlestown, MA 02129

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

**COMMONWEALTH OF MASSACHUSETTS**
**DEPARTMENT OF THE TRIAL COURT**

SUFFOLK, ss. SUPERIOR COURT

JOHN DONAHOE,

Plaintiff,

v.

AMAZON WEB SERVICES, INC.

Defendant.

Civil Action No. ______________

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

Plaintiff John Donahoe ("Mr. Donahoe"), a sixty-one-year-old information technology sales professional, worked for Defendant Amazon Web Services, Inc. ("Amazon" or the "Company") for four years until his unlawful termination on or about March 8, 2024. Throughout his employment, Mr. Donahoe was subjected to unlawful age discrimination, and retaliation for raising concerns about the same, as evidenced not only by the disparate treatment to which he was subjected, but also by the words and actions of Amazon management, who openly called for pushing out older workers in favor of younger.

On the heels of being named a world-wide "Top Performer," having achieved 144% of his sales target—the second highest achievement in his business unit—Amazon placed him on a performance improvement plan under pretextual pretenses and then terminated his employment for failing to meet the unreasonable and unattainable goals established therein.

Mr. Donahoe now brings this action against Amazon seeking damages and other appropriate relief in connection with the following claims: (1) age discrimination in violation of M.G.L. c. 151B, § 4(1B); and (2) retaliation in violation of M.G.L. c. 151B, § 4(4).

PARTIES

1. Plaintiff John Donahoe was at all relevant times a Massachusetts citizen, domiciled in Franklin, Massachusetts.

2. Defendant Amazon is a Delaware corporation with a principal place of business located in Seattle, Washington. Amazon maintains a physical office in Suffolk County Massachusetts at 27 Melcher Street in Boston.

JURISDICTION

3. This Court has jurisdiction over Amazon pursuant to G.L. c. 223A, § 3 because, as set forth in greater detail herein, it transacts business in the Commonwealth, contracts to supply services in the Commonwealth, and/or has an interest in real property in the Commonwealth.

4. This Court has subject matter jurisdiction pursuant to G.L. c. 151B, § 9.

5. Venue is proper in Suffolk County pursuant to G.L. c. 223, § 1 because Amazon has a usual place of business therein.

6. Mr. Donahoe has satisfied his administrative filing requirements as set forth in G.L. c. 151B, § 9 regarding all such claims asserted herein.

FACTS

*Donahoe is Hired by Amazon*

7. Amazon is a wholly owned subsidiary of Amazon, Inc. that provides cloud computing and related web services. At all relevant times, Amazon has maintained an office in Boston Massachusetts, and employed many individuals in Massachusetts, including Mr. Donahoe.

8. Mr. Donahoe was hired into Amazon's sales department in 2020 as a Business Development Manager ("BDM") at the age of fifty-six, after his successful sales career at Dell for nearly two decades.

9. During each year of Mr. Donahoe's employment, Amazon set an annual sales goal for each BDM and assessed performance based on the percentage of the goal achieved.

10. Mr. Donahoe was successful in his role each year, always achieving his annual sales goals, and was consequently promoted in rank in early 2022, though he retained his title of BDM.

11. As part of his promotion, Mr. Donahoe was assigned to the Training and Certification team ("T&C"), where he reported to David Iannocconi ("Mr. Iannocconi"). In this role, he sold licenses to Amazon's training services to businesses throughout the Northeast region of the United States.

12. Following his promotion, Mr. Donahoe continued to excel as a BDM and consistently ranked among the top salespeople in T&C.

*Amazon's Discriminatory Campaign Against Older Employees*

13. Despite Mr. Donahoe's strong sales performance over the years, Amazon targeted Mr. Donahoe for termination because of his age.

14. Upon information and belief, Amazon requires managers to eliminate a certain number of employees each year and identify certain employees as "URA" which stands for Un-Regrettable Attrition.

15. T&C managers habitually use such policies as a pretext to carry out their discriminatory animus against older workers, consistently labeling a disproportionate number of older employees as "URA" regardless of performance. Indeed, T&C managers openly discussed

their desire to reduce the number of older employees, like Mr. Donahoe, in favor of retaining and bringing in younger ones.

16. For example, on or about July 26, 2022, a senior T&C manager, Director of World-Wide Training & Certification Kelvin Mayo ("Mr. Mayo"), convened a meeting with Mr. Iannocconi and other T&C managers in Seattle, Washington called an "organizational leadership review." During this meeting, Mr. Mayo presented data breaking down the workforce composition into various legally protected categories—e.g., age, race, and gender—and declared that Amazon does not want "old, white, bald guys," or words to that effect.

17. Likewise, on or about September 8, 2022, Mr. Donahoe's manager Mr. Iannocconi met with another Amazon supervisor, Sabina Joseph, who declared that Mr. Donahoe needed to be "managed out" of the business because he had "too much experience," or words to that effect. Ms. Joseph shared with Mr. Iannocconi a list of six employees whose employment she recommended be terminated, all of whom, to Mr. Donahoe's understanding, were over fifty years old.

18. Several months later, on or about December 14, 2022, Ms. Joseph, with no basis, told Mr. Iannocconi that he should give Mr. Donahoe the lowest available ranking, "Least Effective," and said she wanted him out of the Company by March 2023.

19. Mr. Iannocconi, citing Mr. Donahoe's strong sales numbers and positive reviews, did not concede to Joseph's discriminatory demands and refused to give Donahoe a low ranking or to terminate his employment at that time. However, in early 2023, Mr. Iannocconi left Amazon, which exposed Mr. Donahoe to the unlawful animus of other T&C supervisors.

*Amazon Sets Mr. Donahoe up for Failure*

20. Amazon issued 2023 sales goals to T&C BDMs—including Mr. Donahoe—in late 2022 and/or early 2023. Each T&C BDM—including Mr. Donahoe—received: an overall sales

target represented in dollars; as well as a sub-goal for sales of each of the two licensed services they sell, viz., Skill Builder seats ("Skill Builder") and Instructor Led Training sessions ("ILT").

21. When assigning sales targets and sub-goals, management clearly and unequivocally told all T&C BDMs—including Mr. Donahoe—that the two sub-goals were not important and rather what mattered was that they meet their *overall sales target* with any combination of Skill Builder and ILT sales.

22. Mr. Donahoe's overall sales numbers in 2023 were excellent. By December 2023, Amazon listed Mr. Donahoe as a 2023 "Top Performer" with the second highest overall sales target achievement (144%) in T&C worldwide.

23. To Mr. Donahoe's great surprise, despite this accomplishment and his history of consistent success, on December 12, 2023, Tunc Caglar—who replaced Mr. Iannocconi—placed Mr. Donahoe on a performance improvement plan called a "Pivot," which Amazon describes as a "program designed for Amazon employees who have shown a *sustained period of underperformance*." The documents provided to Mr. Donahoe attendant to the "Pivot" encouraged him to voluntarily leave employment and provide a release of claims or else face involuntary termination if certain unreasonable expectations were not met.

24. Contradicting the clear and unequivocal guidance provided earlier in the year to Mr. Donahoe and his fellow T&C BDMs, Amazon pretextually alleged that Mr. Donahoe's failure to meet his sub-goal for selling Skill Builder in 2023 justified "underperformance," even though he had vastly overperformed in his ILT sales sub-goal and easily surpassed his overall sales target, consistent with Amazon Managements' expressed expectations.

25. Upon information and belief, a number of younger T&C BDMs failed to meet their Skill Builder sub-goal but were not placed on a Pivot.

26. Mr. Donahoe expressed concern to his manager about Amazon's shifting and contradictory position, and shared his belief that the real reason he was being placed on a "Pivot" was a desire to eliminate older employees.

27. Further, Mr. Donahoe raised concerns that the targets in the "Pivot" were unattainable on the short time-table Amazon established. Specifically, to save his job, Mr. Donahoe was required, among other things, to achieve $270,000 in Skill Builder sales within just *45 days*—younger BDMs not on a Pivot, were expected to achieve only $250,000 in Skill Builder over twice that amount of time.

28. As Mr. Donahoe told Amazon, the Pivot's Skill Builder sales goal was particularly unattainable because Mr. Donahoe's strong ILT sales resulted in most, if not all of his customers, having tapped out their budgets by the end of 2023.

29. Despite raising such concerns, Amazon failed to take effective action to remedy the unlawful conduct, and continued to demand Mr. Donahoe achieve an unattainable number of Skill Builder sales in an impossible time-frame.

30. Further, Amazon doubled-down on the shifting and contradictory assertion that failure to meet the sub-goal of Skill Builder sales represented "underperformance." Amazon asserted, without evidence or support, that management had communicated the need to meet each sub-sales-goal earlier in 2023.

31. On a recorded call on or about January 2024, Mr. Donahoe again raised concerns that Amazon had not communicated that sub-sales-goals were significant. Despite Management insisting otherwise, numerous T&C BDMs wrote to Mr. Donahoe that they shared his understanding, including for example:

a. BDM Brad Nicholson wrote in a group Slack chat: "Team- John brought up in our call today what we were told about our Quota for 2023. I feel bad for not speaking

up at the time, but I went back and checked my notes from the call last January when we were told our numbers. We were certainly each given an ILT number (based on last year +%), and all given a Skill Builder number. **I do have in my notes underlined - Total Revenue Number Most Important - that overachieving in [Instructor Led Training or Skill Builder] could compensate for low achievement in the other number."** (emphasis added).

b. BDM Steve Haft responded: "I also remember this specifically. . . ."

c. BDM Michele Christensen responded: "I absolutely agree. I took notes as well Brad and I plan to share that with [management]."

d. BDM Aleshni Singh responded: "Yes I looked back at my notes as well and similarly heard the same."

*Donahoe is Pushed Out*

32. Unwilling to let Amazon bully him into resignation in favor of younger employees and not wanting to forfeit a job in which he excelled, Mr. Donahoe declined to voluntarily give up his employment and strived to make the sales required under the Pivot, though he repeatedly raised concerns to management that such goals unreasonable and that he had been placed on the Pivot due to age bias.

33. Mr. Donahoe explained to management that he could easily meet his Skill Builder sales targets once his clients' budgets were open again in the spring, but Amazon did not relent.

34. Indeed, as Mr. Donahoe predicted, he created numerous Skill Builder sales opportunities during the Pivot, including $90,000 in Skill Builder sales to one client upon the success of a smaller pilot program, a meeting set with his largest client in early March to discuss a $180,000 Skill Builder purchase, and nearly $500,000 in Skill Builder sales to a third client set to close at the end of the following quarter.

35. Though these created sales opportunities were far beyond Donahoe's Pivot—and even annual—target, because they did not "close" within the condensed Pivot period, Donahoe received no credit and on February 19, 2024, was deemed to have "failed" the Pivot, and terminated his employment effective March 8, 2024.

COUNT I

(Discrimination in violation of G.L. c. 151B, § 4(1B))

36. Mr. Donahoe repeats, realleges, and incorporates by reference the allegations in Paragraphs 1 through XX as if fully set forth herein.

37. The actions of Amazon, as stated in more particularity above and including but not limited to the discrimination against and disparate treatment of Mr. Donahoe, constitute violations of G.L. c. 151B, § 4(1B)'s prohibition of unlawful discrimination on the basis of age.

38. As a direct and proximate result, Mr. Donahoe has suffered and continues to suffer damages.

COUNT II

(Retaliation in violation of G.L. c. 151B, § 4(4))

39. Mr. Donahoe repeats, realleges, and incorporates by reference the allegations in Paragraphs 1 through XX as if fully set forth herein.

40. As stated in more particularity above, Mr. Donahoe engaged in protected activity under G.L. c. 151B. Amazon deliberately, negligently, and/or purposefully retaliated against Donahoe by, among other things, placing him on an unwarranted performance improvement plan, setting unrealistic and disparate sales goals for him, and terminating his employment.

41. The actions of Amazon constitute violations of G.L. c. 151B, § 4(4)'s prohibition on retaliation against employees who engage in protected activity.

42. Amazon's violation of G.L. c. 151B, §4(4) was willful.

43. As a direct and proximate result, Mr. Donahoe has suffered and continues to suffer damages.

WHEREFORE, Mr. Donahoe respectfully requests that this Court:

1. Award judgment in Mr. Donahoe's favor and against Amazon on all Counts;
2. Award Mr. Donahoe compensatory damages including, but not limited to, back pay, front pay, and lost benefits, all with interest at the statutory rate;
3. Award Mr. Donahoe emotional distress damages, with interest at the statutory rate;
4. Award Mr. Donahoe punitive damages, with interest at the statutory rate;
5. Award Donahoe liquidated damages, with interest at the statutory rate;
6. Award Donahoe his attorneys' fees and costs, with interest at the statutory rate; and
7. Order such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff John Donahoe hereby demands a trial by jury on all Counts so triable.

August 4, 2025

The Plaintiff,
John Donahoe,
By his attorney,

*/s/ Suzanne L. Herold*

Suzanne L. Herold (BBO# 675808)
Herold Law Group, P.C.
127 Main Street
Charlestown, MA 02129
(617) 977-4015 (t)
(617) 855-9873 (f)
suzie@heroldlawgroup.com

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Massachusetts Trial Court<br>Superior Court |
|---|---|---|
| | | COUNTY Suffolk Superior Court (Boston) |

| | |
|---|---|
| Plaintiff John Donahoe | Defendant: Amazon Web Servies, Inc. |
| ADDRESS: Franklin,, MA | ADDRESS: Boston, MA |
| Plaintiff Attorney: Suzanne L. Herold | Defendant Attorney: |
| ADDRESS: 127 Main Street | ADDRESS: |
| Charlestown, MA 02129 | |
| BBO: 675808 | BBO: |

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES ☐ NO |

*If "Other" please describe:

**Is there a claim under G.L. c. 93A?** ☐ YES ☐ NO

**Is there a class action under Mass. R. Civ. P. 23?** ☐ YES ☐ NO

**STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date

1. Total hospital expenses
2. Total doctor expenses
3. Total chiropractic expenses
4. Total physical therapy expenses
5. Total other expenses (describe below)

Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date $150,000.00

C. Documented property damages to date

D. Reasonably anticipated future medical and hospital expenses

E. Reasonably anticipated lost wages $500,000.00

F. Other documented items of damages (describe below)

TOTAL (A-F): $650,000.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Self-Represented Plaintiff: X Date:

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION UNDER S.J.C. RULE 1:18(5)**

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X Suzanne L. Herold Date: 08/04/2025

## CIVIL ACTION COVER SHEET INSTRUCTIONS — SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

**AC Actions Involving the State/Municipality †***

AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. (A)
AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. (A)
AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. (A)
AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. (A)

**CN Contract/Business Cases**

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1 (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (A)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal Affairs of Entities (A)
BA3 Liability of Shareholders, Directors, Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation: F, A, and X. On this page, the track designation for each case type is noted in parentheses.

†* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

‡ Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c. 231A (A)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

**PA Civil Actions Involving Incarcerated Party ‡**

PA1 Contract Action involving an Incarcerated Party (A)
PB1 Tortious Action involving an Incarcerated Party (A)
PC1 Real Property Action involving an Incarcerated Party (F)
PD1 Equity Action involving an Incarcerated Party (F)
PE1 Administrative Action involving an Incarcerated Party (F)

**TR Torts**

B03 Motor Vehicle Negligence - Personal Injury/Property Damage (F)
B04 Other Negligence - Personal Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical (A)
B07 Malpractice - Other (A)
B08 Wrongful Death - Non-medical (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (F)
BE1 Fraud, Business Torts, etc. (A)
B99 Other Tortious Action (F)

**RP Summary Process (Real Property)**

S01 Summary Process - Residential (X)
S02 Summary Process - Commercial/ Non-residential (F)

**RP Real Property**

C01 Land Taking (F)
C02 Zoning Appeal, G.L. c. 40A (F)
C03 Dispute Concerning Title (F)
C04 Foreclosure of a Mortgage (X)
C05 Condominium Lien & Charges (X)
C99 Other Real Property Action (F)

**MC Miscellaneous Civil Actions**

E18 Foreign Discovery Proceeding (X)
E97 Prisoner Habeas Corpus (X)
E22 Lottery Assignment, G.L. c. 10, § 28 (X)

**AB Abuse/Harassment Prevention**

E15 Abuse Prevention Petition, G.L. c. 209A (X)
E21 Protection from Harassment, G.L. c. 258E (X)

**AA Administrative Civil Actions**

E02 Appeal from Administrative Agency, G.L. c. 30A (X)
E03 Certiorari Action, G.L. c. 249, § 4 (X)
E05 Confirmation of Arbitration Awards (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9 (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8 (X)
E08 Appointment of a Receiver (X)
E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A (A)
E10 Summary Process Appeal (X)
E11 Worker's Compensation (X)
E16 Auto Surcharge Appeal (X)
E17 Civil Rights Act, G.L. c.12, § 11H (A)
E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) (X)
E94 Forfeiture, G.L. c. 265, § 56 (X)
E95 Forfeiture, G.L. c. 94C, § 47 (F)
E99 Other Administrative Action (X)
Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B (F)
Z02 Appeal Bond Denial (X)

**SO Sex Offender Review**

E12 SDP Commitment, G.L. c. 123A, § 12 (X)
E14 SDP Petition, G.L. c. 123A, § 9(b) (X)

**RC Restricted Civil Actions**

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S (X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES ☐ NO |

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

DUTY OF THE PLAINTIFF — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

DUTY OF THE DEFENDANT — If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

**A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT. IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND ACCURATELY, THE CASE MAY BE DISMISSED.**

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2584CV02159 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Donahoe, John vs. Amazon Web Services, Inc. | | John E Powers, III<br>Suffolk County Civil |
| TO: Suzanne L Herold, Esq.<br>Herold Law Group, P.C.<br>50 Terminal St<br>Building 2 Suite 716<br>Charlestown, MA 02129 | | COURT NAME & ADDRESS<br>Suffolk County Superior Court - Civil<br>Suffolk County Courthouse, 12th Floor<br>Three Pemberton Square<br>Boston, MA 02108 |

**TRACKING ORDER - F - Fast Track**

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION** **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 11/03/2025 | |
| Response to the complaint filed (also see MRCP 12) | | 12/03/2025 | |
| All motions under MRCP 12, 19, and 20 | 12/03/2025 | 01/02/2026 | 02/02/2026 |
| All motions under MRCP 15 | 12/03/2025 | 01/02/2026 | 02/02/2026 |
| All discovery requests **and depositions** served and non-expert depositions completed | 06/01/2026 | | |
| All motions under MRCP 56 | 07/01/2026 | 07/31/2026 | |
| Final pre-trial conference held and/or firm trial date set | | | 11/30/2026 |
| Case shall be resolved and judgment shall issue by | | | 08/05/2027 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
|---|---|---|
| **08/05/2025** | **Michael O'Loughlin** | **(617)788-8172** |